**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

MOORING CAPITAL FUND, LLC,
a Delaware limited liability company,

    Plaintiff,

v.                                                CIVIL ACTION NO.: 3:16-CV-74
                                                          (GROH)

NEIL J. SULLIVAN, II; JUDY S. SULLIVAN;
JENNIFER S. MAGHAN, in her capacity as the
Clerk of the County Commission of Jefferson County,
West Virginia; and the COUNTY COMMISSION
OF JEFFERSON COUNTY, WEST VIRGINIA,

    Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING JENNIFER MAGHAN'S AND THE JEFFERSON COUNTY COMMISSION'S**
**SUPPLEMENTAL MOTION TO WITHDRAW REFERENCE**

Currently pending before the Court is Jennifer Maghan's and the Jefferson County Commission's Supplemental Motion to Withdraw Reference [ECF No. 9 in 3:16-CV-74]; Mooring Capital Fund, LLC's Motion to Sever and Withdraw Reference [ECF No. 7 in 3:16-CV-74]; Jennifer Maghan's and the Jefferson County Commission's Motion to Dismiss or, in the Alternative, Motion to Withdraw Reference [ECF No. 4 in 3:16-CV-74]; and Jennifer Maghan's Motion to Dismiss or, in the Alternative, Motion to Withdraw Reference [ECF No. 1 in 3:16-CV-74]. For the following reasons, the Court **ORDERS** that the Supplemental Motion to Withdraw Reference [ECF No. 9 in 3:16-CV-74] is **DENIED** and the remaining pending motions [ECF Nos. 7, 4, 1 in 3:16-CV-74] are **DENIED AS MOOT**.

## I. Factual Background[1]

In April of 2005, 201 North George Street, LLC ("the Debtor"), obtained a two million dollar construction loan from Middleburg Bank ("Middleburg") for the refurbishing and remodeling of a commercial building located at 201 North George Street in Charles Town, West Virginia ("the Property"). The 2005 loan was "secured by a first lien on the Property granted pursuant to a certain Construction Deed [o]f Trust, dated April 29, 2005," and recorded in the Jefferson County Clerk's Office. ECF No. 15-1 at 2-3 in 3:16-CV-74. Approximately one year later, in May of 2006, the Debtor received a $450,000.00 loan from Neil and Judy Sullivan ("the Sullivans") in exchange for a ten percent ownership interest in the Debtor. The 2006 Sullivan loan was "secured by a second lien on the Property, granted pursuant to a document purporting to be a certain Deed [o]f Trust, dated May 5, 2006," and recorded in the Jefferson County Clerk's Office. ECF No. 15-1 at 3 in 3:16-CV-74.

Later, in April of 2008, Middleburg and the Debtor agreed to refinance the April 2005 loan. Prior to the refinance, attorney John K. Dorsey was retained by Middleburg to conduct a title search on the Property. Upon conducting a search of the records in the Jefferson County Clerk's Office, Mr. Dorsey determined that Middleburg's 2008 refinance would be first in priority as no other liens on the Property were present in the indices. Based in part on Mr. Dorsey's title search, the Debtor obtained a loan from Middleburg in the amount of $2,150,000.00 to refinance the earlier April 2005 loan. The 2008 loan was "secured by a lien on the Property, granted pursuant to a certain Deed [o]f Trust, dated

---

[1] The information contained within this section is derived from Mooring Capital Fund, LLC's amended complaint. ECF No. 15-1 in 3:16-CV-74; see also ECF No. 150 at 6-21 in 3:14-AP-16.

April 4, 2008," and recorded in the Jefferson County Clerk's Office. ECF No. 15-1 at 4 in 3:16-CV-74. Mooring states that both the Debtor and Middleburg intended for Middleburg to "have a first lien position on the Property." ECF No. 15-1 at 4 in 3:16-CV-74. Because the Debtor represented that Middleburg retained a first lien on the Property, and in light of Mr. Dorsey's title search indicating the same, Middleburg released the 2005 deed of trust. On March 6, 2014, Middleburg assigned its 2008 loan and deed of trust to Plaintiff Mooring Capital Fund, LLC ("Mooring").

Mooring contends that the Sullivans were aware that their lien on the Property was second in priority to that of Middleburg's and that at the time of Mr. Dorsey's title search, the Sullivans' interest in the Property was not ascertainable because their 2006 deed of trust was incorrectly and improperly indexed in the Jefferson County Clerk's Office. As a result of Jennifer Maghan's ("the Clerk") improper indexing, Middleburg's 2008 deed of trust—which is now assigned to Mooring—is reflected as being second in priority to the Sullivans' 2006 deed of trust.

Based upon the aforementioned facts, on April 17, 2014, Mooring initiated an adversary proceeding in the United States Bankruptcy Court for the Northern District of West Virginia ("the Bankruptcy Court").[2] On December 15, 2015, the Bankruptcy Court granted Mooring leave to file an amended complaint, which requests relief in the form of (1) a declaratory judgment finding the Sullivans' 2006 deed of trust subordinate to Middleburg's 2008 deed of trust; (2) a declaratory judgment finding that Middleburg's release of the 2005 deed of trust was based upon a mistake of fact, thereby restoring the first priority of the 2005 deed of trust; (3) a declaratory judgment finding that the Sullivans'

---

[2] The proceeding was assigned adversary proceeding number 3:14-AP-16.

3

2006 investment was not a loan but a capital contribution, thus nullifying the 2006 deed of trust; (4) equitable subordination of the Sullivans' 2006 deed of trust in light of the their bad faith and inequitable conduct; (5) equitable subordination of the Sullivans' 2006 deed of trust in light of the Clerk's negligence in indexing; (6) equitable subordination of the Sullivans' 2006 deed of trust due to their inequitable and tortious interference with the contractual relationship between Middleburg and the Debtor; and (7) an order pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 through 29-12A-18, awarding judgment against the Clerk for actual, incidental and compensatory damages, and related attorney's fees, legal expenses and costs.[3] ECF No. 15-1 in 3:16-CV-74; see also ECF No. 150 at 6-21 in 3:14-AP-16.

## II. Procedural History

On March 21, 2014, the Debtor filed a Chapter 11 voluntary petition in the Bankruptcy Court. ECF No. 1 in 3:14-BK-294. Thereafter, on April 17, 2014, Mooring initiated an adversary proceeding to determine the priority of certain security interests in the Property. ECF No. 1 in 3:14-AP-16. Mooring's original complaint named the Sullivans and the Clerk as defendants. ECF No. 1 in 3:14-AP-16. On July 28, 2014, Mooring and the Clerk filed a joint motion to bifurcate and stay all proceedings regarding the claim asserted against the Clerk. ECF No. 50 in 3:14-AP-16. The joint motion indicated that if the Bankruptcy Court granted Mooring's requested relief against the Sullivans, Mooring's "claims against the Jefferson County Clerk will be rendered moot as Mooring Capital will not have suffered the damages for which it seeks recovery in its claims against the Jefferson County Clerk." ECF No. 50 at 2 in 3:14-AP-16. The joint motion further

---

[3] On April 20, 2016, the Bankruptcy Court granted in part a motion to dismiss filed by the Sullivans and dismissed counts four through six of the amended complaint. ECF No. 216 at 7 in 3:14-AP-16.

4

indicated that if the Bankruptcy Court did not grant Mooring's requested relief against the Sullivans, "then Mooring Capital's recourse will be its claims against the Jefferson County Clerk." ECF No. 50 at 2 in 3:14-AP-16. On August 4, 2014, the Bankruptcy Court granted the motion and provided that Mooring's claims against the Clerk would be stayed "until Mooring Capital's declaratory relief claims against the Sullivans have been resolved." ECF No. 53 at 2 in 3:14-AP-16.

Following the stay and bifurcation of Mooring's claim against the Clerk, Mooring and the Sullivans continued litigation in the adversary proceeding. On May 15 and 16, 2015, Mooring and the Sullivans filed their cross-motions for summary judgment and on September 28, 2015, the Bankruptcy Court denied both. ECF No. 133 in 3:14-AP-16. The following week, the Bankruptcy Court entered an order requiring Mooring to advise whether or not it would seek to vacate the bifurcation and stay of its claim against the Clerk. ECF No. 143 in 3:14-AP-16. On October 15, 2015, Mooring filed a statement indicating that it would not seek to vacate the bifurcation and stay prior to the trial of the adversary proceeding against the Sullivans. ECF No. 147 in 3:14-AP-16.

On October 23, 2015, Mooring filed a motion to amend its complaint, which the Bankruptcy Court granted. ECF Nos. 150, 175 in 3:14-AP-16. On December 15, 2015, Mooring's first amended complaint was filed in the adversary proceeding.[4] "[O]ut of an abundance of precaution," Mooring's amended complaint added the County Commission of Jefferson County, West Virginia ("the Commission"), as a defendant. ECF No. 150 at 4 in 3:14-AP-16. In response to the amended complaint, the Clerk, the Commission and

---

[4] Mooring advised that its amended complaint did not serve as a request to lift the stay of the proceeding against the Clerk and that it was "willing to stipulate that said stay would apply to the County Commission." ECF No. 150 at 4 in 3:14-AP-16.

5

the Sullivans filed motions to dismiss, and on April 20, 2016, the Bankruptcy Court dismissed counts three through six.  See ECF Nos. 171, 182, 184, 187, 216 in 3:14-AP-16.  Prior to the Bankruptcy Court's dismissal of counts three through six, on February 16, 2016, Mooring, the Clerk and the Commission filed a joint motion to extend indefinitely, or until further order of the Bankruptcy Court, Mooring's responses to the Clerk's and the Commission's motions to dismiss, "consistent with the current effective stay of all proceedings on the claims asserted by Mooring against the Jefferson County Commission Clerk and the Jefferson County Commission."  ECF No. 199 in 3:14-AP-16.  Two days later, an agreed order was entered by the Bankruptcy Court granting the motion to extend.  ECF No. 203 in 3:14-AP-16.

Thereafter, on April 22, 2016, Mooring filed a motion to sever and withdraw the reference of its claims against the Clerk and the Commission, to which the Clerk and the Commission filed a response in opposition.  ECF Nos. 7, 8 in 3:16-CV-74; see also ECF Nos. 218, 228 in 3:14-AP-16.  In its motion to sever and withdraw reference, Mooring requested that the Bankruptcy Court sever its claim against the Clerk and the Commission from its claims against the Sullivans and, further, that the proceeding against the Clerk and the Commission be removed to this Court in light of the Clerk's and the Commission's request for a jury trial.[5]  ECF No. 7 in 3:16-CV-74; see also ECF No. 218 in 3:14-AP-16.  In their response, the Clerk and the Commission disagreed that Mooring's claim against them should be severed from the claims against the Sullivans, but instead argued that the Bankruptcy Court adversary proceeding should be removed to this Court in its entirety.  ECF No. 8 in 3:16-CV-74; see also ECF No. 228 in 3:14-AP-16.  On May 9,

---

[5] Mooring agrees that the Clerk and the Commission are entitled to a jury trial.

6

2016, Mooring filed a request with the Bankruptcy Court for leave to file a reply to the Clerk's and the Commission's response in opposition, but the Bankruptcy Court denied the request and, additionally, directed the Clerk and the Commission to "file their own motion to withdraw the reference" if they intended to seek such relief. ECF No. 230 at 2 in 3:14-AP-16. As a result, on May 23, 2016, the Clerk and the Commission filed their supplemental motion to withdraw reference in the Bankruptcy Court. ECF No. 235 in 3:14-AP-16; see also ECF No. 9 in 3:16-CV-74. On May 31, 2016, Mooring filed its response in opposition, and on June 6, 2016, the Clerk and the Commission filed their reply. ECF Nos. 236, 240 in 3:14-AP-16; see also ECF Nos. 10, 11 in 3:16-CV-74. On June 7, 2016, the Bankruptcy Court transmitted the relevant documents regarding the supplemental motion to withdraw reference to this Court for review. ECF No. 241 in 3:14-AP-16; see also ECF No. 1-1 in 3:16-CV-74.

### III. Applicable Law

Although district courts have original jurisdiction over all civil proceedings arising under, arising in or related to a case under Title 11 of the United States Bankruptcy Code, 28 U.S.C. § 1334(b), they may refer bankruptcy cases to non-Article III bankruptcy judges, 28 U.S.C. § 157(a). However, there are particular instances in which a district court may exercise its discretion—and other instances in which a district court is required—to withdraw a reference to the bankruptcy court. Pursuant to 28 U.S.C. § 157(d),

> The district court may withdraw, in whole or in part, any case or proceeding referred [to the bankruptcy court] under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

7

If the bankruptcy proceeding falls under the second sentence of § 157(d), it triggers mandatory withdrawal and, upon timely motion, the proceeding must be removed to the district court. See In re Vicars Ins. Agency, Inc., 96 F.3d 949, 951-52 (7th Cir. 1996); Allen v. Nat'l City Mortg. Co., No. 2:04 CV 188, 2006 WL 3899997, at *1 (S.D. W. Va. July 13, 2006). On the contrary, if the bankruptcy proceeding falls under the first sentence of § 157(d), it triggers permissive withdrawal and the district court will conduct a review of six factors to determine whether it should exercise its discretion to withdraw the reference to the bankruptcy court. See Allen, 2006 WL 3899997, at *1-2.

Courts within this circuit have routinely used the "substantial and material" approach in determining whether withdrawal falls under § 157(d)'s mandatory provision. See, e.g., Fort v. Fed. Deposit Ins. Co. (In re First Nat'l Bancshares, Inc.), No. 7:12-3441-TMC, 2014 WL 108372, at *2 (D.S.C. Jan. 10, 2014); Vieira v. AGM, II, LLC, 366 B.R. 532, 535 (D.S.C. 2007); Snodgrass v. New Century Mortg. Corp., 358 B.R. 675, 678-79 (S.D. W. Va. 2006). This approach deems withdrawal mandatory "when a 'substantial and material' consideration of [a] non-Title 11 [federal] statute will be necessary to the resolution of the dispute." Snodgrass, 358 B.R. at 678 (citing Mich. Milk Producers Ass'n v. Hunter, 46 B.R. 214, 216 (N.D. Ohio 1985)). Additionally, this approach requires that the relevant non-Title 11 statute necessitate "some degree of interpretation, as opposed to mere application." Id. at 679 (internal quotations omitted) (first citing In re Vicars, 96 F.3d at 954; then citing City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991)).

If the court does not find withdrawal mandatory, it reviews the following factors to determine whether it should exercise permissive withdrawal:

8

> (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) promoting judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial.

Allen, 2006 WL 3899997, at *2 (citing In re U.S. Airways Grp., Inc., 296 B.R. 673, 681 (E.D. Va. 2003)). Of most importance is the first factor: whether the bankruptcy case is considered a core or non-core proceeding. Id. (citing In re Coe-Truman Techs., Inc., 214 B.R. 183, 187 (N.D. Ill. 1997)); see also S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys), 94 F.3d 755, 762 (2d Cir. 1996).

## IV. Discussion

### A. Mandatory Versus Permissive Withdrawal

The parties fail to address whether the instant motion to withdraw reference implicates the mandatory or permissive provision of 28 U.S.C. § 157(d). Therefore, the Court will address this issue *sua sponte*. On April 20, 2016, the Bankruptcy Court granted in part the Sullivans' motion to dismiss, leaving intact counts one, two, three and seven of Mooring's amended complaint. Count one of the amended complaint requests a declaratory judgment finding the Sullivans' 2006 deed of trust subordinate to Middleburg's 2008 deed of trust. ECF No. 15-1 at 5-7 in 3:16-CV-74. It is indisputable that count one of the amended complaint requests a "determination[ ] of the validity, extent, or priority of liens," see 28 U.S.C. § 157(b)(2)(K), which does not require "substantial and material" consideration of a non-Title 11 federal statute. While consideration of West Virginia state law is required to determine the order of priorities in the bankruptcy case, there are no *federal* statutes—apart from bankruptcy statutes—that must be interpreted in order to determine the priority of the liens at issue. See City of New York, 932 F.2d at 1026

9

(opining that the "mandatory withdrawal provision" of § 157(d) "has been interpreted to require withdrawal to the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes"). The parties do not provide any federal statutes—other than those arising under bankruptcy—that the Bankruptcy Court would be required to interpret in order to afford the relief requested by Mooring.[6] Indeed, the Clerk and the Commission state that "[t]he issues of knowledge, recording and priority will all be determined according to the West Virginia laws and rules." ECF No. 13 at 11 in 3:16-CV-74.

The required interpretation of state law does not give rise to mandatory withdrawal under § 157(d). See Smalis v. Huntington Bank (In re Smalis), Civil Action No. 15-1474, 2016 WL 1639673, at *2 (W.D. Pa. Apr. 26, 2016) ("Plaintiff makes a number of Pennsylvania state law claims, which do not provide an appropriate basis for mandatory withdrawal."); Blue Cross and Blue Shield of N.C. v. Jemsek Clinic, P.A., 506 B.R. 694, 697 n.1 (W.D.N.C. 2014) ("As the two claims remaining are state law counterclaims, mandatory withdrawal is not an issue in this case and the Court confines its analysis to discretionary withdrawal."); S. La. Ethanol, LLC v. Agrico Sales, Inc., Civil Action No. 11-3059, 2012 WL 174646, at *3 n.6 (E.D. La. Jan. 20, 2012) ("Mandatory withdrawal does not apply because the adversary complaint is based solely on state law."); OHC Liquidation Tr. v. Discovery RE (In re Oakwood Homes Corp.), Civil Action No. 06-436-JJF, 2007 WL 2071730, at *2 (D. Del. July 17, 2007) (holding that because the case did not require consideration of a federal statute outside of the Bankruptcy Code, mandatory

---

[6] The Clerk and the Commission aver that "the issue of [lien] priority rests in West Virginia law." ECF No. 13 at 6 in 3:16-CV-74.

withdrawal pursuant to § 157 was inappropriate). Therefore, because count one does not require interpretation of non-Title 11 federal law, it does not implicate mandatory withdrawal under § 157(d).

Likewise, count two of the amended complaint does not require substantial and material consideration of a non-Title 11 federal statute. Count two requests a declaratory judgment finding that Middleburg's release of the 2005 deed of trust was based upon a mistake of fact, thereby restoring its first priority status. ECF No. 15-1 at 7-9 in 3:16-CV-74. Similar to count one, count two requests a determination of lien validity and priority, which involves the interpretation of state law. Thus, count two also does not implicate mandatory withdrawal under § 157(d). Similarly, count three of the amended complaint involves state law application and interpretation as it requests a declaration that the $450,000.00 in funds provided to the Debtor by the Sullivans is a capital contribution—not a loan—and therefore the Sullivans' 2006 deed of trust is "void and of no force and effect." ECF No. 15-1 at 10 in 3:16-CV-74. Finally, count seven does not require interpretation of non-Title 11 federal law as it alleges mere negligence against the Clerk and the Commission—a claim that both parties agree "will be decided under West Virginia tort or common law." See ECF Nos. 5 at 15, 13 at 7 in 3:16-CV-74. Accordingly, because the remaining counts in Mooring's amended complaint do not require an interpretation of non-Title 11 federal law, mandatory withdrawal under § 157(d) is inapplicable. Therefore, the Court will consider the factors relevant in determining whether it should exercise permissive withdrawal under § 157(d).

### B. Granting Permissive Withdrawal

In determining whether to exercise its discretion to grant permissive withdrawal under § 157(d), the Court reviews the following factors:

> (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) promoting judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial.

Allen, 2006 WL 3899997, at *2 (citing In re U.S. Airways, 296 B.R. at 681). The Court will consider each in turn.

The first factor, whether the underlying bankruptcy action is a core or non-core proceeding, is of most importance. Id. at *2 (citation omitted). A finding that the underlying proceeding is core in nature weighs against withdrawal. See Vieira, 366 B.R. at 539; Allen, 2006 WL 3899997, at *2. Counts one, two and three involve the determination of lien priority and validity; thus, they are core proceedings weighing against withdrawal. See 28 U.S.C. § 157(b)(2)(K). However, count seven—the negligence claim against the Clerk and the Commission—does not involve the application of bankruptcy law and is thus a non-core proceeding. See Dwyer v. First Nat'l Bank (In re O'Brien), 414 B.R. 92, 98 (S.D. W. Va. 2009) (defining the scope of core and non-core proceedings).

Next, the second, third and fourth factors weigh against withdrawal as it is indisputable that a determination under § 157(b)(2)(K) will be best made in the Bankruptcy Court and adjudicating the claims in a single cause of action in a single court will promote judicial economy and better preserve the parties' resources. Aside from count seven, all other remaining counts in the amended complaint involve the determination of lien

12

priority—an issue regularly considered by bankruptcy courts. See, e.g., Official Comm. of Unsecured Creditors of Appalachian Fuels, LLC v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744 (E.D. Ky. 2012); FKF Madison Park Grp. Owner, LLC v. 18 E. 23rd St. Realty Co. (In re FKF Madison Park Grp. Owner, LLC), Bankruptcy No. 10-11867(KG), 2012 WL 174342, at *3 (Bankr. D. Del. Jan. 20, 2012); In re Sahni, 227 B.R. 748, 751 (D. Kan. 1998). The parties have repeatedly acknowledged, through their filings in this Court and in the Bankruptcy Court, that the resolution of Mooring's claims against the Sullivans will determine whether or not any cause of action remains against the Clerk and the Commission. For example, in their supplemental motion to withdraw, the Clerk and the Commission state that "if it is determined that the Sullivan Loan was actually a capital contribution, the priority issue and claims against the County Defendants [the Clerk and the Commission] are moot." ECF No. 13 at 11 in 3:16-CV-74. Additionally, they advise that if the Bankruptcy Court finds "that [Mooring], through its predecessor [Middleburg], had actual or constructive knowledge of the Sullivan loan prior to releasing its earlier deed of trust, the priority issue is resolved and the claims against the County Defendants are moot." ECF No. 13 at 11 in 3:16-CV-74. Notably, the possibility that Mooring's claim against the Clerk and the Commission would be rendered moot led the parties to file a joint motion to bifurcate and stay the proceedings against the Clerk in Bankruptcy Court. See ECF No. 50 in 3:14-AP-16.[7] Because it is possible that the Bankruptcy Court may find Mooring's lien to be first in priority, thereby resulting in an

---

[7] Specifically, the Clerk and Mooring jointly moved the Bankruptcy Court "for an order bifurcating Mooring Capital's claims asserted against the Jefferson County Clerk, and staying all proceedings regarding said claims." ECF No. 50 at 1 in 3:14-AP-16.

13

effective dismissal of the claim against the Clerk and the Commission, granting withdrawal at this time is unnecessary and inefficient.

Moving on to the fifth factor, there is no evidence of forum shopping in the instant case and therefore this factor is neither in favor of nor against withdrawal. Lastly, the sixth factor weighs against withdrawal. It is true that the Clerk and the Commission are entitled to a trial by jury in regard to Mooring's negligence claim against them. However, even though bankruptcy courts are not permitted to conduct jury trials without the express consent of all parties, this "does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial." Official Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.), 13 F.3d 122, 128 (4th Cir. 1993); see also In re Nicole Energy Servs., Inc. v. McClathey, No. 2:06-cv-0162, 2007 WL 915199, at *4 (S.D. Ohio Mar. 26, 2007) ("Judicial efficiency and uniformity will be promoted by allowing the bankruptcy court, already familiar with the underlying action, to manage the proceedings until the case becomes ready for trial. That is ordinarily the more appropriate option given the fact that the district court has discretion to determine how much of a case to withdraw from the bankruptcy court even when withdrawal is required in order to conduct a jury trial." (internal quotations and citations omitted)).

Mooring, the Clerk and the Commission agree that if the Bankruptcy Court grants Mooring's requested relief against the Sullivans, Mooring's claim against the Clerk and the Commission will be moot. See ECF No. 50 at 2 in 3:14-AP-16. The parties further agree that if the Bankruptcy Court does not grant Mooring's requested relief against the

14

Sullivans, then Mooring will proceed with its claims against the Clerk and the Commission. See ECF No. 50 at 2 in 3:14-AP-16. To date, Mooring's claims against the Sullivans continue to move forward in the Bankruptcy Court. Originally, the trial on Mooring's claims against the Sullivans was scheduled for December 16, 2015. See ECF No. 143 in 3:14-AP-16. However, on October 23, 2015, Mooring filed a motion to amend its complaint, which the Bankruptcy Court granted. See ECF Nos. 150, 175 in 3:14-AP-16. As a result, the trial scheduled for December 16, 2015, was continued and has yet to occur. Therefore, because the claim against the Clerk and the Commission may be rendered moot, the Court finds that withdrawal at this time is premature. Importantly, "declining to withdraw the reference at this time preserves the right to a jury trial [on Mooring's claim against the Clerk and the Commission] because the reference may be [later] withdrawn *if and when* a jury trial becomes necessary." In re O'Brien, 414 B.R. at 103 (emphasis added).

### V. Conclusion

The Court does not find that the underlying bankruptcy proceeding implicates mandatory withdrawal under 28 U.S.C. § 157(d). As such, it is permitted to exercise its discretion in determining whether the proceeding should nevertheless be removed to this Court pursuant to 28 U.S.C. § 157(d)'s permissive provision. Upon review of the applicable factors, the Court finds that permissive withdrawal is premature. Accordingly, the Court **ORDERS** that Jennifer Maghan's and the Jefferson County Commission's Supplemental Motion to Withdraw Reference [ECF No. 9 in 3:16-CV-74] is hereby **DENIED**. The Court further **ORDERS** that the remaining pending motions [ECF Nos. 7, 4, 1 in 3:16-CV-74] are **DENIED AS MOOT**. The Court grants the Clerk and the

15

Commission leave to file a renewed motion to withdraw reference following the Bankruptcy Court's final disposition of Mooring's claims against the Sullivans.

There being no further matters to address, the Court **ORDERS** the above-styled matter **STRICKEN** from its active docket.

The Clerk of this Court is **DIRECTED** to transmit copies of this Order to all counsel of record and to the United States Bankruptcy Court for the Northern District of West Virginia.

**DATED:** September 6, 2016

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE